# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SABRINA THOMPSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-226

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Sabrina Thompson, brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc.12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply

memorandum. (Doc. 19).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in June 2011, alleging disability since

May 24, 2011, due to high blood pressure, knee problems, a torn meniscus, depression,

carpal tunnel syndrome, and back problems. After initial administrative denials of her claim,

plaintiff was afforded a *de novo* hearing before administrative law judge (ALJ) Kristen King on

March 21, 2013. On May 3, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI

applications.

On July 3, 2013, plaintiff filed a request for review with the Appeals Council, which was

granted. On November 7, 2014, the Appeals Council vacated the ALJ's hearing decision and

remanded this case to the ALJ for resolution of further issues, including reconsideration of

plaintiff's maximum residual functional capacity, evaluation of plaintiff's treating and non-treating sources, and identification and resolution of any conflicts between the occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT).

On May 15, 2015, the ALJ held a supplemental hearing, at which plaintiff, represented by counsel, appeared and testified. A vocational expert (VE) also testified. On November 19, 2015, the ALJ again found that plaintiff was not disabled. On March 6, 2017, plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The [plaintiff] has not engaged in substantial gainful activity since May 24, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: bilateral carpal tunnel syndrome, degenerative joint disease, degenerative disc disease, obstructive sleep apnea, osteoarthritis, degenerative changes of the knee, personality disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is further limited to never operating foot controls with the lower left extremity; occasionally balancing, stooping, kneeling, crouching, crawling or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally reaching overhead with the bilateral upper extremities; frequent handling, fingering, or feeling with the upper extremities; avoiding all use of dangerous machinery and all exposure to unprotected heights; performing simple, routine tasks; performing goal-oriented work, but no constant production rate pace work such as an automated assembly line; handling changes in a work setting that occur no more than 15% of a workday; and interacting with the public no more than approximately 10% of a workday, but no transactional interaction, such as sales or negotiations.

6. The [plaintiff] is unable to perform past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] ... 1970 and was 40 years old, which is defined as younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

---

[1] Plaintiff has past relevant work as a bus driver and certified nurse aide, which are both medium, semiskilled positions. (Tr. 29, 64, 441).

economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

13 The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 15, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-25).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as housekeeper/cleaner (600 jobs regionally and 150,000 nationally), router (300 jobs regionally and 55,000 nationally), production work helper (250 jobs regionally and 30,000 nationally), inspector (300 jobs regionally and 50,000 nationally), and collator operator (50 jobs regionally and 16,000 jobs nationally). (Tr. 30, 66-67).

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence

#### i. Medical Records[3]

On August 4, 2011, plaintiff visited the Veteran's Administration (VA) Hospital for a psychiatry risk assessment screening. (Tr. 639-43). She complained of depression and mood problems. (*Id.*). Plaintiff reported that she had mood swings and her mood tended to be either really good or bad. (*Id.*). Plaintiff also noted that she feels angry "all of the time." (*Id.*). During the mental status interview, plaintiff was cooperative, yet tearful with a flat affect and questionable insight and judgment. (Tr. 641). Plaintiff was diagnosed with a history of possible bipolar disorder with depressed mood and rule out: depressive disorder, adjustment disorder, bereavement, and post-acute stress following an incident at work. (*Id.*). Plaintiff was referred to psychiatric outpatient treatment and counseling and was immediately seen by staff psychiatrist Dr. Shannon Miller. (Tr. 638-39). Dr. Miller prescribed Lamictal and Diphenhydramine. (Tr. 638).

---

[3] The undersigned will solely consider the mental health evidence of record. In her statement of errors, as discussed below, plaintiff challenges the weight given to her treating psychologist, Dr. Barnett, as well as the ALJ's RFC findings with respect to her mental impairments and the ALJ's finding that she did not meet Listing 12.04. (Doc. 12). Therefore, the Court determines that plaintiff has waived any arguments related to her physical impairments. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (internal citations omitted).

On August 30, 2011, plaintiff began treatment with staff psychiatrist Jalynn Barnett at the VA. She reported being "extremely overwhelmed" by psychosocial stressors and low energy levels, which made it difficult to complete activities of daily living. (Tr. 624). Plaintiff reported anhedonia, amotivation, crying spells, difficulty with cognitions (difficulty concentrating and short-term memory lapses) and difficulty sleeping. (Tr. 624-25). On mental status examination, plaintiff was alert, but hesitated to speak freely. (Tr. 625). She had a dysthymic mood and some paucity of speech, but her thoughts were goal-directed and her recent and remote memories were intact. Plaintiff cried during the interview and expressed feelings of hopelessness. (*Id.*). Dr. Barnett diagnosed major depressive episode and mood disorder and rated plaintiff's Global Assessment of Functioning ("GAF") score at 44.[4] (*Id.*).

In September 2011, plaintiff underwent an individual psychotherapy session with Seta Rusinak, M.A., a psychology intern at the VA. (Tr. 618). During the session, plaintiff displayed depression symptoms, including sadness, tearfulness, low mood, poor sleep, low energy, and anger. (Tr. 618). On examination, she was very frustrated, overwhelmed, tearful, and maintained poor eye contact. (*Id.*). She was diagnosed with recurrent major depressive disorder

---

[4] The "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Konecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. The DSM-IV categorizes individuals with GAF scores of 31 to 40 as having "some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking or mood. *Id*. at 32. A score of 41 to 50 is indicative of "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders*, p. 34 (4th ed. 2000).

and assigned a GAF score of 55.[5]  (Tr. 618-19).  During a psychotherapy session with Ms.

Rusinak a few weeks later, plaintiff continued to be tearful and struggled to maintain eye contact.

(Tr. 763).  Ms. Rusinak noted that plaintiff was struggling significantly with tolerating her

emotions and making decisions based on her goals, instead of reacting purely to her fluctuating

emotions.  (*Id.*).  Ms. Rusinak assessed recurrent major depressive disorder and borderline

personality disorder traits.  (*Id.*).

Plaintiff continued treatment with Dr. Barnett in 2011 and 2012.  She consistently

reported symptoms of depression, feeling overwhelmed, low energy levels, crying spells, and

anger.  (Tr. 749-50, 754-55, 972-973, 988, 998, 1005, 1019).  In October 2011, plaintiff reported

being extremely overwhelmed by psychosocial stressors and her inability to pay monthly bills.

(Tr. 754-55).  Dr. Barnett observed that plaintiff was hesitant to speak at first, but opened up as

the session progressed.  (Tr. 755).  Plaintiff had a dysthymic mood and congruent affect, cried,

and expressed feelings of hopelessness concerning her financial situation.  (*Id.*).  Dr. Barnett

assessed depression and mood disorder and assigned a GAF score of 43.  (*Id.*).  In November

2011, plaintiff reported difficulty concentrating and short term memory lapses.  (Tr. 749).  On

examination, plaintiff had much less hesitancy to speak and a much brighter mood.  (*Id*).  In

February, June, August, and September 2012, plaintiff continued to report depressive and

anxious symptoms and continued to express concerns about her financial distress.  (Tr. 987-88,

998-999, 1004-05, 1019-1020).  Plaintiff had much less hesitancy to speak and exhibited a

frustrated mood, but did not cry during these sessions.  (Tr. 988, 999, 1005, 1020).  Dr. Barnett

---

[5] A GAF of 55 indicates indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006).  *DSM–IV–TR* at 34 (capitalization and boldface omitted).

assessed depression and mood disorder. (*Id.*). During this time, Dr. Barnett rated plaintiff's

GAF score between 43 and 48 and adjusted her medications. (Tr. 750, 973, 988, 999, 1005,

1020). In November 2012, plaintiff reported having violent fantasies about her former

significant other, as well as paranoia and a high level of anger. (Tr. 972). During the session,

plaintiff was more hesitant to speak and had an irritable mood and congruent affect. (Tr. 973).

Plaintiff's thoughts were goal-directed, but she expressed more feelings of hopelessness about

her financial distress. (*Id.*).

During a session with Dr. Barnett in March 2013, plaintiff reported being overwhelmed

by psychosocial stressors, including the ability to take care of her children. (Tr. 940). Plaintiff

expressed homicidal ideation toward her children's father. (*Id.*). During the session, plaintiff

was hesitant to speak and had difficulty answering questions. (Tr. 941). She had an irritable and

labile mood and was tearful. (*Id.*). Dr. Barnett assessed depression and mood disorder. (*Id.*).

Dr. Barnett recommended voluntary admission to the VA Hospital for safety and stabilization.

(*Id.*). At this time, Dr. Barnett rated plaintiff's GAF score at 40. (*Id.*). Plaintiff continued to

treat with Dr. Barnett throughout 2013. Plaintiff continued to report low energy levels,

anhedonia, amotivation, crying spells, difficulty concentrating, suicidal ideation, and agitations.

(Tr. 1332-1333, 1349, 1389, 1394). During this time, mental status examinations revealed

tearfulness, hesitancy to speak, labile mood, and irritability. (Tr. 1333, 1350, 1389, 1394). Over

the course of 2013, plaintiff's GAF was never rated higher than 42 and Dr. Barnett either

increased or started new medications at every office visit. (*Id.*).

Plaintiff visited Dr. Barnett on three occasions in 2014. In May 2014, plaintiff reported

that she was overwhelmed and having difficulty coping with varying levels of anger. (Tr. 1246).

Plaintiff no longer expressed homicidal ideation towards her children's father. (*Id.*). Plaintiff reported low energy levels, but mildly less anhedonia, amotivation, and crying spells. (Tr. 1261). Plaintiff spoke with less hesitancy and was mildly irritable with a less labile mood. (*Id.*). Dr. Barnett assessed depression and mood disorder and assigned her a GAF score of 43. (*Id.*). By November 2014, after not attending therapy for several months, plaintiff reported that she had shut down from grief after the passing of her sister and had stopped taking her psychiatric medications. (Tr. 1215). She reported low energy, heightened stress and reduced activity, crying spells, difficulty concentrating, agitation and short-term memory lapses. (Tr. 1216). Dr. Barnett noted irritability, sadness, and tearfulness and resumed plaintiff's medications. (*Id.*).

In March 2015, plaintiff reported to Dr. Barnett that she had stopped taking her most recently prescribed medications. (Tr. 1474). Plaintiff reported that she was still grieving her sister's passing and her house burned down. (*Id.*). Plaintiff continued to be overwhelmed by psychosocial stressors and reported having a baseline level of anger that was difficult to control. (*Id.*). During the session, plaintiff was sad, tearful, and mildly irritable with a less labile mood. (Tr. 1475). When returning to Dr. Barnett in July 2015, plaintiff was still overwhelmed by psychosocial stressors and continued to feel difficulty in coping, but expressed lesser feelings of hopelessness concerning her financial situation and family situation. (Tr. 1634).

### ii. Medical Opinions

On March 18, 2013, Dr. Barnett completed a mental impairment questionnaire where she listed plaintiff's diagnoses as a mood disorder and bereavement. (Tr. 1032). Dr. Barnett reported plaintiff's current GAF score was 40, with the highest in the past year as 49. (*Id.*). Dr. Barnett listed plaintiff's clinical findings as: extreme mood lability, low threshold for tearfulness,

poor coping; homicidal fantasies (recommended admission); depressed/anxious mood; irritability; and impaired concentration. (*Id.*). Dr. Barnett listed plaintiff's signs and symptoms as follows: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; impairment in impulse control; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; intense and unstable interpersonal relationships and impulsive and damaging behavior; motor tension; emotional lability; easy distractibility; short term memory impairment; and sleep disturbance. (Tr. 1033).

In evaluating plaintiff's mental abilities to do unskilled work, Dr. Barnett opined that plaintiff was "unable to meet competitive standards" in maintaining regular attendance and punctuality; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workings or peers without unduly distracting them or exhibiting behavioral extremes. (Tr. 1034). Dr. Barnett explained that plaintiff's limitations resulted from impaired frustration and tolerance and higher baseline irritability. (*Id.*). Dr. Barnett opined that plaintiff was "unable to meet competitive standards" in understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or making plans independently of others; and dealing with stress of semiskilled and skilled work. (*Id.*). Dr. Barnett explained plaintiff's limitations as resulting from impaired attention/concentration. (*Id.*). Dr. Barnett assessed plaintiff's functional limitations as extreme difficulty in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 1035). Dr. Barnett opined that plaintiff had three episodes of decompensation within a 12-month period, each of at least two weeks' duration. (*Id.*). Dr. Barnett estimated that plaintiff's

impairments or treatment would cause her to be absent from work more than four days per month. (Tr. 1036). She estimated that plaintiff's impairment could be expected to last at least twelve months. (*Id.*).

On April 4, 2015, Dr. Barnett completed another mental impairment questionnaire in which she listed plaintiff's diagnosis as depressive disorder with a current GAF score of 42. (Tr. 1415). Dr. Barnett listed plaintiff's clinical findings as: irritable/anxious affect; excessive psychomotor agitation; hopelessness with passive suicidal ideation and occasional homicidal ideation; paranoia; and limited insight/judgment. (*Id.*). Dr. Barnett explained that she treated plaintiff for medication management/supportive therapy and plaintiff had "none to mild improvement." (*Id.*). Dr. Barnett noted that plaintiff's prognosis was "limited to poor." (*Id.*). In assessing plaintiff's limitations, Dr. Barnett opined that plaintiff had moderately severe limitations in her ability to understand and remember detailed instructions; her ability to maintain attention and concentration for extended periods; and her ability to maintain concentration, persistence, or pace. (Tr. 1416-17). Dr. Barnett opined that plaintiff had severe limitations in the following areas: ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to interact appropriately with the general public; ability to accept instructions and response appropriately to criticism from supervisors; and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). Dr. Barnett again estimated that plaintiff's impairments or treatments would cause her to be absent from work more than four days per month. (Tr. 1418). Dr. Barnett concluded:

> The patient suffers from intrinsically low frustration tolerance and a high baseline level of irritability. This has made her family and personal life more tumultuous and has made it more difficult to maintain appropriate interpersonal

dynamics in work situations.

> More recently her depression symptoms have had more of a cognitive impact with more consistent concentration and short-term memory deficits. This has made it harder for her to keep up with family obligations appropriately enough anyway (i.e. makes mistakes with timing, planning, and so forth) much less being able to resume work tasks when she is doubting her ability to take care of personal affairs by reaching a place of requesting more help from resources in that regards anyway.

(Tr. 1419).

In September 2011, plaintiff underwent a consultative psychological examination with Dr. George Lester, Psy.D., at the request of the state agency. (Tr. 542-49). Plaintiff stated that she was seeking disability due to bipolar disorder and other physical conditions. (Tr. 543). During the mental status examination, plaintiff was initially cooperative, engaged, and pleasant. (Tr. 545). However, plaintiff became very quiet, unresponsive, and angry towards the end of the interview. (*Id.*). Plaintiff exhibited an appropriate range of affect at times, but was more constricted at others. (*Id.*). She briefly became tearful on one occasion. (*Id.*). Plaintiff stated that she lacked interest in things she used to enjoy and felt "more than depressed." (*Id.*). Plaintiff reported difficulty concentrating, occasional suicidal ideation, and crying spells "all the time." (*Id.*). Plaintiff shut down completely when questioned about her temper. (Tr. 546). Dr. Lester observed that plaintiff may require assistance making important decisions. (Tr. 547). In concluding the examination, Dr. Lester assigned a GAF score of 50. (Tr. 548). He diagnosed her with mood disorder and personality disorder. (Tr. 547).

Dr. Todd Finnerty, Psy.D., reviewed the record and completed a mental RFC assessment at the request of the state agency on September 29, 2011. (Tr. 110-21). Dr. Finnerty noted that plaintiff was moderately limited in her ability to maintain attention and concentration for

extended periods and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 118). Dr. Finnerty further noted that plaintiff was capable of performing a static set of tasks without fast pace. (*Id.*). Dr. Finnerty noted that plaintiff was moderately limited in her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors, and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). Dr. Finnerty noted: "[plaintiff] has difficulty with her temper control. The [plaintiff] can interact with others briefly, infrequently and superficially." (*Id.*). State agency psychologist Dr. Leslie Rudy, Ph.D., reviewed the record for reconsideration purposes on February 13, 2012 and largely affirmed Dr. Finnerty's assessment. (Tr. 136-46).

### E. Specific Errors

On appeal, plaintiff argues that the ALJ erred by (1) improperly weighing the medical source opinions of record; (2) improperly determining her RFC; and (3) improperly finding that she did not meet Listing 12.04. (Doc. 12 at 9-15).

### 1. First assignment of error: Whether the ALJ erred in weighing the opinion of plaintiff's treating psychiatrist

Plaintiff alleges as her first assignment of error that the ALJ erred by failing to properly weigh the medical opinion evidence of record, including the opinion of her treating psychiatrist Dr. Barnett. (Doc. 12 at 10). Plaintiff argues that the ALJ failed to comply with the regulations when weighing the opinion of her treating physician and failed to point to any treatment notes or other evidence in the record that conflicted with Dr. Barnett's opinion and the GAF scores that she recorded. (*Id.*). Plaintiff explains that in every treatment note, Dr. Barnett noted plaintiff's symptoms, including depression, feeling overwhelmed, trouble with agitation, thoughts of

homicide, difficulty answering questions, low energy, crying spells, and difficulty with concentration. (*Id.*) (citing Tr. 586, 749, 754, 940-41, 972-73, 988, 998, 1005, 1019, 1215-16, 1246, 1260-61, 1332-33, 1349-50, 1388-89, 1393-94, 1474-75). Plaintiff also contends that Dr. Barnett observed plaintiff's hesitancy to speak and dysthymic, irritable, anxious, frustrated, and labile moods. (*Id.* at 10-11) (citing Tr. 587, 755, 941, 973, 988, 999, 1005, 1216, 1247, 1261, 1333, 1350, 1389, 1394, 1475). Plaintiff argues that Dr. Barnett's findings are also consistent with the findings of the consultative examiner, Dr. Lester, and her own testimony of her daily activities at both hearings in 2013 and 2015. (*Id.* at 11). Plaintiff argues that the ALJ erred in significantly relying on instances of medication non-compliance, which resulted from situational stressors. (*Id.*). Plaintiff argues that the ALJ erred in affording the opinions of the non-examining state agency psychologists great weight because these opinions were rendered nearly four years prior to the most recent administrative hearing in 2015 and before many of Dr. Barnett's mental health assessments. (*Id.*). Specifically, plaintiff argues that Dr. Finnerty rendered his opinion based solely on one month of progress notes from her treatment with Dr. Barnett at the VA and Dr. Rudy rendered her opinion based solely on three sessions of notes from her treatment with Dr. Barnett. (*Id.* at 12).

In response, the Commissioner contends that the ALJ reasonably afforded Dr. Barnett's opinion little weight and adequately explained why Dr. Barnett's opinions and GAF scores were generally unsupported by her narrative treatment notes and plaintiff's daily activities. (Doc. 17 at 7). The Commissioner notes that an emergency room visit in late 2014 revealed that plaintiff had a normal mood, behavior, and affect. (*Id.*). The Commissioner contends that the ALJ reasonably considered plaintiff's non-compliance with medication and treatment, noting that

there were several instances where plaintiff failed to attend therapy appointments. (*Id.* at 8) (citing Tr. 582, 690, 698, 947, 955, 985, 1006, 1007, 1009, 1020, 1224, 1260, 1263, 1320). The Commissioner further argues that Dr. Barnett's opinion is inconsistent with plaintiff's testimony at the 2015 hearing regarding her daily activities and plaintiff's reports to other medical sources, including consultative examiner Dr. Lester in 2011. (*Id.*). The Commissioner contends that even if the ALJ failed to provide good reasons for not crediting Dr. Barnett's opinions, the ALJ's decision would be supported by substantial evidence because Dr. Barnett's opinions were "so patently deficient that no reasonable ALJ would have credited them." (*Id.* at 9). The Commissioner points out that many of plaintiff's own statements in the record demonstrate that she was not as limited as Dr. Barnett assessed. (*Id.* at 9-10). Further, the Commissioner argues that the ALJ properly evaluated the opinions of the state-agency reviewing psychologists. (*Id.* at 10). Even though Drs. Finnerty and Rudy rendered their opinions four years before the administrative hearing and did not review any evidence from treating psychiatrist Dr. Barnett, the Commissioner contends that "any shortcoming in their opinions was remedied by the ALJ's thorough review of the record." (*Id.* at 11) (quoting *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009)).

In reply, plaintiff disputes the Commissioner's assertion that she missed several appointments with Dr. Barnett and failed to comply with treatment. (Doc. 19 at 2). Plaintiff states that between August 2011 and July 2015, plaintiff was seen by Dr. Barnett eighteen times and had appointments every two to three months. (*Id.*) (citing Tr. 586-87, 749-50, 754-55, 940-42, 972-73, 988, 998-99, 1005, 1019-20, 1215-16, 1246-47, 1260-61, 1332-33, 1349-50, 1388-89, 1393-94, 1474-75, 1633-34). Plaintiff notes that she saw Dr. Barnett nine times before her

16

March 2013 assessment was completed and eight times before her April 2015 assessment was completed. (*Id.*). Plaintiff maintains that the ALJ conducted a "selective review" in citing two instances of her non-compliance with prescribed medications, which were caused by the situational stressors of her sister's death and a house fire. (*Id.* at 1-2). Plaintiff also argues in reply that her own testimony and reports to Dr. Lester at the consultative examination do not contradict Dr. Barnett's assessment. (*Id.* at 3).

The ALJ assigned Dr. Barnett's opinion little weight. (Tr. 27). The ALJ noted: "[d]espite Dr. Barnett's status as a treating psychiatrist, these GAF scores in the 40's and check box opinions are generally not supported by the narrative treatment notes or the daily activities. . . ." (Tr. 28). The ALJ noted that plaintiff was "able to go out alone, use public transportation, and shop by herself, presenting no more than a moderate restriction in social functioning." (*Id.*). The ALJ also stated that plaintiff is "able to maintain her household with some assistance and care for the needs of her children," which "stands in stark contrast with Dr. Barnett's findings and suggests that he is not observing her baseline behavior." (*Id.*). The ALJ further explained: "since the [plaintiff] secured these two narrative opinions, there is no evidence of reassessment, and considering her non-compliance with medication therapy, this record suggests that her presentation may have been, in part, for the purpose of obtaining a favorable evaluation to support a disability claim." (*Id.*). The ALJ afforded the opinion of the state agency reviewing psychologists "some weight," noting that the restrictions they assessed were generally consistent with the record. (Tr. 29). However, the ALJ noted that she modified the limitations assessed by the state agency reviewing psychologists to more fully accommodate plaintiff's mental restrictions in the RFC. (*Id.*).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion

is, how consistent the opinion is with the record as a whole, and other factors which tend to

support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*,

710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544

(ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).

Those reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This

procedural requirement "ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting

*Wilson*, 378 F.3d at 544).

The Court finds that the ALJ failed to properly weigh the opinion of Dr. Barnett and

failed to articulate good reasons as to why her opinion was only entitled to "little weight." The

Court is unable to discern the evidentiary basis for the ALJ's decision to discount Dr. Barnett's

opinion. The ALJ declined to give Dr. Barnett's opinion controlling weight because her findings

were purportedly inconsistent with plaintiff's testimony regarding her daily activities, including

her ability to go out alone, use public transportation, shop by herself, and take care of her family.

(Tr. 28). The ALJ also declined to give Dr. Barnett's opinion controlling weight because her

opinion was purportedly inconsistent with narrative treatment notes and previous findings. (*Id.*).

However, the ALJ failed to explain this finding or reference Dr. Barnett's clinical notes or other

record evidence which purportedly supports this conclusion. *See Cole*, 661 F.3d at 937. The only mention of Dr. Barnett's treatment notes in the ALJ's decision relate to two instances when plaintiff reported to Dr. Barnett that she was not taking her prescribed medications. (Tr. 26). In addition, the ALJ's decision only mentions one instance where Dr. Barnett's opinion conflicts with emergency room records from late 2014 indicating that plaintiff had a normal mood and affect. (*Id.*).

The ALJ's opinion does not reflect that she considered Dr. Barnett's clinical findings outlined above which appear to be consistent with her medical source statements assessing plaintiff's serious limitations. (Tr. 1032-37, 1415-19). Indeed, the record contradicts the ALJ's finding because Dr. Barnett's treatment notes and clinical records spanning from 2011 to 2015 appear to support her opinion that plaintiff suffers from depressive disorder which limits her ability to function from a mental standpoint. *See* Tr. 624 (low energy levels, crying, feelings of hopelessness); Tr. 618 (sadness, tearfulness, low energy, anger); Tr. 763 (tearful, struggling with fluctuating emotions); Tr. 755 (dysthymic mood, crying, congruent affect); Tr. 988, 999, 1005, 1020 (frustrated mood); Tr. 972 (violent fantasies, irritable mood and congruent affect, feelings of hopelessness); Tr. 941 (irritable and labile mood, tearful, and Dr. Barnett recommended voluntary admission to the VA for safety and stabilization); Tr. 1333, 1350, 1389, 1394 (tearfulness, hesitant to speak, labile mood, irritability); Tr. 1216 (irritability, sadness, tearfulness); Tr. 1474-75 (difficulty controlling anger, sad, tearful, mildly irritable). Consistent with the treatment notes, most recently, in April 2015, Dr. Barnett opined that plaintiff's prognosis was "limited to poor" and her depression symptoms created a limited frustration tolerance and limited ability to concentrate, which would cause her to be absent from work more

20

than 4 days per month. (Tr. 1419). In addition, the consultative psychological examination conducted by Dr. Lester lends further support for Dr. Barnett's opinion. (Tr. 542-49). Dr. Lester recorded a GAF score of 50 and reported no significant inconsistencies with his examination and plaintiff's self-reports of depression, irritability, and temper control. (Tr. 548). In light of the evidence of record, the ALJ's rejection of Dr. Barnett's opinion on the ground that her opinion is inconsistent with the medical evidence is not substantially supported.

The ALJ also rejected Dr. Barnett's opinion because it was purportedly inconsistent with plaintiff's testimony of her daily activities and her own reports to Dr. Lester in 2011. While the Commissioner attempts to *post hoc* rationalize the ALJ's conclusion (*See* Doc. 17 at 8-10), in the absence of any discussion or explanation of the alleged inconsistencies between plaintiff's testimony and Dr. Barnett's opinion by the ALJ in her decision, it is unclear to the undersigned how plaintiff's ability to engage in minimal activities such as occasional shopping, occasional use of public transportation, and caring for the needs of her children undermines the entirety of plaintiff's treating psychologist's opinion. (Tr. 28). In any event, the purported inconsistencies between Dr. Barnett's opinion and plaintiff's reports of her daily activities are not good reasons to assign Dr. Barnett's opinion only some weight because "'the fact that [p]laintiff engages in minor life activities is not inconsistent with disabling' limitations." *Spurlock v. Comm'r of Soc. Sec.*, No. 1:14-cv-990, 2015 WL 7423621, at *6 (S.D. Ohio Nov. 23, 2015) (Report and Recommendation) (quoting *Meece v. Barnhart*, 193 F. App'x 456, 465 (6th Cir. 2006); *Gayheart*, 710 F.3d at 377), *adopted*, 2015 WL 9460471, (S.D. Ohio Dec. 28, 2015) (Dlott, J.).

Moreover, the ALJ's decision to discount Dr. Barnett's opinion due to two instances of plaintiff's medication noncompliance is not substantially supported by the record. In November

2014, plaintiff reported that she had not been taking her prescribed medication due to her sister's death. (Tr. 1215). In March 2015, plaintiff reported that she had not been taking her medication after her house burned down. (Tr. 1474). However, Dr. Barnett herself did not indicate that plaintiff was noncompliant with taking her prescribed medications. Rather, in her most recent opinion in April 2015, Dr. Barnett indicated that she prescribed three medications and she often consulted with plaintiff for medication management/supportive therapy, but plaintiff had "none to mild improvement." (Tr. 1415). As plaintiff notes, Dr. Barnett treated her eighteen times, every two to three months, and only two instances of medication non-compliance are present in the record, which are the result of situational stressors. Accordingly, the Court finds that the ALJ did not reasonably rely on plaintiff's noncompliance with treatment to discount Dr. Barnett's opinion.

The Court also finds that the ALJ's decision does not reflect a consideration of the regulatory factors in assessing the weight to the treating psychiatrist's opinion. Where, as here, an ALJ declines to give controlling weight to the opinion of a treating physician, the ALJ must nevertheless balance certain regulatory factors in assessing the weight to give that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Here, the ALJ made no attempt to apply the above regulatory factors. The ALJ did not discuss Dr. Barnett's long-standing treatment history with plaintiff dating back to August 2011, nor did the ALJ discuss the frequency of her examinations of plaintiff, the nature and extent of her treatment relationship, the supportability of her opinion, or the consistency of her opinion with the record as a whole. *See id. See also Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. The Court cannot say that the opinion of Dr. Barnett is "so patently deficient that the Commissioner could not possibly credit" it and

therefore excuse the ALJ's failure to conduct a meaningful review in this case. *Wilson*, 378 F.3d at 546-47. Dr. Barnett had a long-standing treatment relationship with plaintiff and prescribed several treatment modalities in an effort to treat plaintiff's conditions, including medications and therapy. In her March 2015 mental impairment questionnaire, Dr. Barnett cited plaintiff's clinical findings as the medical basis supporting plaintiff's mental impairment and symptoms. (Tr. 1415). Clinical findings, in addition to those cited above, included irritable/anxious affect with minimal range, excessive psychomotor agitation, hopelessness/passive suicidal ideation and occasional homicidal ideation, some paranoid trends, and limited insight/judgment. (*Id.*). In light of Dr. Barnett's long-standing treatment relationship with plaintiff, along with the objective and clinical findings of record, the Court cannot say that the Commissioner "could not possibly" credit the opinion of Dr. Barnett. Because the ALJ failed to give good reasons for giving the treating physician's opinion "little weight" and adequately consider the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ's rejection of Dr. Barnett's opinion is not supported by substantial evidence.

## 2. The Court need not reach plaintiff's remaining assignments of error.

It is not necessary to address plaintiff's remaining assignments of error that the ALJ's RFC determination is not substantially supported and the ALJ erred in improperly analyzing whether her mental impairments satisfy Listing 12.04, 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. Because this case should be remanded for the ALJ to reconsider and reweigh Dr. Barnett's opinion, this may impact the remainder of the ALJ's analysis, including the RFC determination and whether plaintiff meets Listing 12.04. Whether plaintiff's RFC is more restrictive than that

found by the ALJ and whether plaintiff meets the "B" criteria[6] of Listing 12.04 depends on the weight ultimately afforded to Dr. Barnett's opinion. Therefore, the Court declines to reach these two assignments of error.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical opinion evidence in accordance with this decision; to reassess plaintiff's RFC, giving appropriate weight to the opinion of Dr. Barnett, including an explanation on the record for the weight afforded to her opinion; to reassess whether plaintiff's mental impairments satisfy Listing 12.04; and for further medical and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 5/21/18

Karen L. Litkovitz
United States Magistrate Judge

---

[6] Both parties agree that plaintiff meets the "A" criteria of Listing 12.04.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SABRINA THOMPSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-226
Black, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).